IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD MIKOLA, CAROL MIKOLA, and RMCM, LLC | : : : | 4:CV-07-0612 |
| Plaintiffs, | : : | (Judge McClure) |
| v. | : : | |
| PENN LYON HOMES, INC., HIGH TECH HOME BUILDERS, LLC, GREGORY A. NILSEN, ELIZABETH NILSEN, DAISY LANE HOLDINGS, LLC, and VERMONT ESTATE HOME BUILDERS, LLC, | : : : : : : : | |
| Defendants. | : | |

**O R D E R**

May 13, 2007

**BACKGROUND:**

On March 30, 2007, plaintiffs Richard and Carol Mikola filed a complaint against defendants, Penn Lyon Homes, Inc. ("Penn Lyon"), High Tech Home Builders, LLC ("High Tech"), Gregory A. Nilsen, Elizabeth Nilsen, Daisy Lane Holdings, LLC ("Daisy Lane"), and Vermont Estate Home Builders, LLC ("Vermont Estate"). On October 24, 2007, plaintiffs filed an amended complaint which added RMCM, LLC as a plaintiff, a company wholly owned by the Mikolas.

In the amended complaint, plaintiffs allege a cause of action based on

Pennsylvania's unfair trade practices and consumer protection law (Count I), breach of contract (Count II), negligence (Count III), breach of warranties and the Magnuson-Moss Warranty Act (Count IV), conversion (Count V), and civil conspiracy (Count VI).  The complaint stems from a contract allegedly entered into between plaintiffs and defendants in which defendants would construct a modular home and install it on plaintiff's property.  The complaint further alleges that defendants failed to properly construct and install the home and committed fraudulent and deceptive conduct along the way.

The parties are currently conducting discovery.  On February 6, 2008, defendants Elizabeth Nilsen (who refers to herself as Elizabeth Waters) and Daisy Lane Holdings (collectively "defendants") filed a "Motion for a Protective Order Modifying the Location of the Noticed Deposition of Defendant Waters" (Rec. Doc. No. 48) and a "Motion to Quash or Modify Subpoena and for a Protective Order Limiting the Scope of the Subpoena" (Rec. Doc. No. 49).  An opposing brief has been filed that addresses both motions.  (Rec. Doc. No. 58.)  By order of court creating an expedited briefing schedule, no reply briefs were permitted.  (Rec. Doc. No. 50.)  For the following reasons, the court will grant the first motion for a protective order and modify the location of the noticed deposition of Waters.  We will grant the second motion but only to the extent consistent with this opinion.

**DISCUSSION:**

### I.  Motion for a Protective Order

In their first motion, defendants contend that Waters has been served with a notice of a deposition to take place in Scranton, Pennsylvania.  (Rec. Doc. No. 48, at 3.)  Furthermore, they contend that Nilsen is a single mother of two teenage boys with no child care options and that she lives in Arlington, Vermont, which is more than 230 miles from Scranton, Pennsylvania.  (Id. at 4.)

Rule 26(c)(1)(B) of the Federal Rules of Civil Procedure allows a party or person from whom discovery is sought to move for a protective order and that "[t]he court, may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms, including time and place, for the disclosure or discovery."

We agree with Waters that requiring her to travel to Scranton, Pennsylvania would create an undue burden.  Based on the filing of this motion, it appears clear that neither party wishes to travel to the other for the deposition.  Yet, plaintiffs have voluntarily brought this action and seek to depose Waters.  Waters, on the other hand, has been forced into this action and is not the party seeking to conduct the deposition.  Furthermore, we note that the travel distance and Water's living situation also militates in favor of not requiring her to travel to Scranton.  Finally,

we note that plaintiffs are free to depose plaintiff by telephone, which would require neither party to travel. Although plaintiffs argue that this would not permit plaintiffs' counsel to observe her demeanor when answering questions, this hardly constitutes sufficient justification to force Waters to travel to Scranton. See Loughin v. Occidental Chem. Corp., 234 F.R.D. 75, 77 (E.D.Pa. 2005) (Robreno, J.) (noting that a desire to depose an individual in person simply to observe his or her demeanor, without more, does not amount to good cause for denying a request to conduct a telephonic deposition). If this observation is so pivotal, plaintiffs' counsel may travel to Vermont to conduct the deposition or arrange for the deposition to be conducted by video conference. See id. (noting that a party can cure any prejudice they claim from failing to observe the deponent's demeanor by traveling to the deponent).

Therefore, we will grant defendants' "Motion for a Protective Order Modifying the Location of the Noticed Deposition of Defendant Waters" and will quash the notice of deposition of Elizabeth Waters. If plaintiffs wish to serve a new notice of deposition, plaintiffs are ordered to either notice the deposition for a location in Arlington, Vermont or within 25 miles of its border, or to agree to conduct the deposition by telephone.

## II. Motion to Quash/Motion for a Protective Order

In their second motion, defendants challenge a subpoena that was issued by plaintiffs to Berkshire Bank.  Specifically, the subpoena requests any and all documents relating to the checking or savings accounts of defendant Waters and defendant Daisy Lane from January 1, 2003 to December 31, 2006.  (Rec. Doc. No. 49-2, at 2.)  Defendants contend that the portion of the subpoena requesting Waters' personal account information should be quashed and that the portion requesting Daisy Lane's account information should be limited in scope to the time period of the allegedly fraudulent conveyance.  (Id. at 5-6.)

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the contours for discovery and provides that "[p]arties may obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense."  Furthermore, the rule states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Rule 45(c)(3)(A)(iii) and (iv) states that a court "must quash or modify a subpoena" that "requires disclosure of privileged or otherwise protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  Similarly, Rule 26(c)(1) permits a party to move for a protective order and states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

Defendant Waters is the principal of defendant Daisy Lane and was previously married to defendant Gregory A. Nilsen, who runs High Tech.  (Id. at 3.)  In April of 2004, Daisy Lane made a loan to High Tech in the amount of $48,000, which was secured by a mortgage on a piece of property owned by High Tech in Milford, Pennsylvania.  (Id. at 4.)  When High Tech did not have the funds to repay the mortgage, High Tech transferred the deed to the property to Daisy Lane in lieu of foreclosure.  (Id.)  In their amended complaint, plaintiffs have alleged that High Tech is the alter ego of defendant Nilsen and that Daisy Lane is the alter ego of defendant Waters.  (Rec. Doc. No. 37, ¶¶ 9-17.)  Plaintiffs have further alleged that the transaction between High Tech and Daisy Lane amounts to a fraudulent conveyance of assets from High Tech/Nilsen to Waters/Daisy Lane in an effort to shield such assets from creditors.  (Id. ¶¶ 78-81.)

In light of the transaction between High Tech and Daisy Lane, as well as the allegations concerning the relationship between Waters and Daisy Lane, we believe that the subpoena is reasonably calculated to lead to the discovery of admissible evidence.  Although Waters contends that her personal account information, which evidently includes custodial accounts she holds with her children, contains "privileged, personal, private and sensitive financial records," (Rec. Doc. No. 49, at 3) we are unaware of any privilege that should operate to prevent defendant from

discovering this information. Similarly, although defendants' bank records are entitled to some level of privacy, we do not believe that the subpoena will cause "annoyance, embarrassment, oppression, or undue burden or expense." Finally, we note that plaintiffs have voluntarily offered to restrict their subpoena to not include the production of records from joint accounts held by Waters and her children. (Rec. Doc. No. 58, at 12.)

Therefore, for these reasons, we will grant defendants' "Motion to Quash or Modify Subpoena and for a Protective Order Limiting the Scope of the Subpoena" but will only limit the subpoena to require that Berkshire Bank not produce records concerning joint accounts held by Waters and her children. Berkshire Bank is otherwise required to comply with the subpoena.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendant Waters' "Motion for a Protective Order Modifying the Location of the Noticed Deposition of Defendant Waters" is GRANTED. (Rec. Doc. No. 48.)

2. The prior notice of deposition of defendant Elizabeth Waters is quashed. If plaintiffs wish to serve a new notice of deposition, plaintiffs are ordered to either notice the deposition for a location in Arlington, Vermont or within 25 miles of its border or to agree to

      conduct the deposition by telephone.

3.    Defendant Waters' "Motion to Quash or Modify Subpoena and for a Protective Order Limiting the Scope of the Subpoena" is GRANTED only to the extent consistent with this opinion. (Rec. Doc. No. 49.)

4.    Berkshire Bank is ordered to comply with the subpoena except that it should not produce records concerning joint accounts held by Waters and her children.

        s/ James F. McClure, Jr.
        JAMES F. McCLURE, JR.
        United States District Judge