IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD MIKOLA, CAROL MIKOLA, and RMCM, LLC | : | 4:CV-07-0612 |
| | : | |
| Plaintiffs, | : | (Judge McClure) |
| | : | |
| v. | : | |
| | : | |
| PENN LYON HOMES, INC., HIGH TECH HOME BUILDERS, LLC, GREGORY A. NILSEN, ELIZABETH NILSEN, DAISY LANE HOLDINGS, LLC, and VERMONT ESTATE HOME BUILDERS, LLC, | : | |
| | : | |
| Defendants. | : | |

**M E M O R A N D U M**

June 4, 2008

**BACKGROUND:**

On March 30, 2007, plaintiffs Richard and Carol Mikola filed a complaint against defendants, Penn Lyon Homes, Inc. ("Penn Lyon"), High Tech Home Builders, LLC ("High Tech"), Gregory A. Nilsen, Elizabeth Nilsen, Daisy Lane Holdings, LLC ("Daisy Lane"), and Vermont Estate Home Builders, LLC ("Vermont Estate"). On October 24, 2007, plaintiffs filed an amended complaint which added RMCM, LLC as a plaintiff, a company wholly owned by the Mikolas.

In their amended complaint, plaintiffs allege a cause of action based on

Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count I), breach of contract (Count II), negligence (Count III), breach of warranties and the Magnuson-Moss Warranty Act (Count IV), conversion (Count V), and civil conspiracy (Count VI).  The complaint stems from a contract allegedly entered into between plaintiffs and defendants in which defendants would construct a modular home and install it on plaintiff's property.  The complaint further alleges that defendants failed to properly construct and install the home and committed fraudulent and deceptive conduct along the way.

The parties are currently conducting discovery.  On March 3, 2008, defendant Penn Lyon filed a "Motion . . . for Partial Judgment on the Pleadings." (Rec. Doc. No. 60.)  On March 12, 2008, defendants High Tech, Gregory Nilsen, Elizabeth Waters, Daisy Lane, and Vermont Estate (hereinafter "Nilsen defendants") filed a "Motion . . for Partial Summary Judgment on the Pleadings." Both motions raise substantially similar issues.  (Rec. Doc. No. 62.)  Opposing and reply briefs have been filed for both motions.  For the following reasons, we will grant both motions in part.  We will dismiss Count III as to the Nilsen defendants and will dismiss Count IV as to all defendants.  The remaining counts are permitted to proceed.

**DISCUSSION:**

## I. Applicable Standard

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed - but early enough not to delay trial."  The standard used in analyzing a motion for judgment on the pleadings is identical to the standard applicable to a motion to dismiss under Rule 12(b)(6).  Chovanes v. Thoroughbred Racing Ass'n, No. Civ. No. 99-185, 2001 WL 43780 at *1 (E.D. Pa. January 18, 2001) (O'Neill, J.); DeBraun v. Meissner, 958 F. Supp. 227, 229 (E.D. Pa. 1997) (Ditter, J.).  The primary difference is that a Rule 12(b)(6) motion is filed before the answer, while a Rule 12(c) motion is filed after the answer.  Prima v. Darden Restaurants, Inc., 78 F. Supp. 2d 337, 341-42 (D.N.J. 2000).

When considering a motion to dismiss under Rule 12(b)(6), the court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  Kost, 1 F.3d at 183.  At the motion to dismiss stage, the court considers whether plaintiff is

entitled to offer evidence to support the allegations in the complaint. <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000). A complaint should only be dismissed if, accepting as true all of the allegations in the complaint, plaintiff has not plead enough facts to state a claim to relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1960 (2007).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." <u>Id.</u> at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." <u>Id.</u> at 327.

## II.  Statement of Relevant Allegations

In their amended complaint, plaintiffs allege that in 2003 plaintiffs began exploring the possibility of purchasing a modular home from manufacturer Penn Lyon. (Rec. Doc. No. 37, ¶¶ 22-27.) They were informed by Penn Lyon that its homes were sold exclusively through its authorized builders, and were given the contact information for High Tech and Gregory Nilsen. (<u>Id.</u> ¶¶ 25-28.) Plaintiffs contacted High Tech and Nilsen and on May 24, 2004, plaintiffs entered into a

4

building construction agreement with them along with a purchase order for a home

manufactured by Penn Lyon.  (<u>Id.</u> ¶ 32.)  The home was to be constructed on a lot

plaintiffs had recently purchased in Pike County, Pennsylvania.  (<u>Id.</u> ¶ 30.)

Plaintiffs allege that the project was never completed according to the terms

of the contract.  (<u>Id.</u> ¶ 72.)  They point out numerous deficiencies in the work done

by High Tech and Nilsen.  (<u>Id.</u> ¶ 75.)  Similarly, they allege that Penn Lyon failed

to assure that the home was set properly on the foundation and that it was weather-

tight.  (<u>Id.</u> ¶¶ 58-59.)  They also allege that Penn Lyon failed to properly train

Nilsen or review his construction experience and background prior to making him

an authorized builder.  (<u>Id.</u> ¶ 33.)

Plaintiffs further allege that defendant Elizabeth Nilsen (who now goes by

Elizabeth Waters), was Nilsen's wife during the time period of the contract.  (<u>Id.</u> ¶

6.)  During this time, she was in charge of Daisy Lane.  (<u>Id.</u> ¶¶ 14-17.)  On April

13, 2004 High Tech and Nilsen signed a mortgage note on real property in Milford,

Pennsylvania in favor of Daisy Lane and Waters which required that the mortgage

be fully satisfied in one year.  (<u>Id.</u> ¶ 79.)  High Tech and Nilsen never made a

single payment and the mortgage was not satisfied within a year.  (<u>Id.</u> ¶ 80.)  High

Tech and Nilsen then deeded the property to Daisy Lane and Waters in lieu of

foreclosure.  (<u>Id.</u> ¶ 81.)  Plaintiffs allege that this transaction amounts to a

fraudulent conveyance of assets from High Tech and Nilsen to Daisy Lane in an effort to shield such assets from creditors.  (Id. ¶ 81.)  Plaintiffs also contend that in July 2005, High Tech transferred real property situated in Vermont to Vermont Estate for little or no consideration.  (Id. ¶ 83.)

Finally, plaintiffs allege that defendant High Tech and Vermont Estate are both run by defendant Nilsen and are shells and his alter egos.  (Id. ¶ 9.)  They allege that neither maintains a separate existence from Nilsen and plaintiffs therefore seek to pierce the corporate veil and hold Nilsen personally liable for the misconduct of High Tech and Vermont Estate.  (Id. ¶ 13.)  Similarly, they allege that defendant Daisy Lane is run by defendant Waters and is her alter ego.  (Id. ¶ 14.)  Plaintiffs allege that Daisy Lane does not maintain a separate existence from Waters and plaintiffs therefore seek to pierce the corporate veil and hold Waters personally liable for the misconduct of Daisy Lane.  (Id. ¶¶ 15-17.)

## III.  Analysis

A.  Count I - Pennsylvania's Unfair Trade Practices and Consumer Protection Law

In the motions, both Penn Lyon and the Nilsen defendants argue that Count I of the amended complaint should be dismissed because Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) is only applicable to

residents of Pennsylvania and plaintiffs are all residents of Florida.  (Rec. Doc. No. 61, at 5-7; Rec. Doc. No. 63, at 5-6.)  Furthermore, Penn Lyon argues that plaintiffs' contract for purchase was with High Tech and plaintiffs may therefore not maintain a claim under the UTPCPL against Penn Lyon.  (Rec. Doc. No. 61, at 6.)  Similarly, they contend that plaintiffs are not purchasers of goods for personal, family or household purposes.  (Id.)  The Nilsen defendants argue that plaintiffs have failed to allege that their alleged fraudulent conduct created any confusion or misunderstanding by the plaintiffs.  (Rec. Doc. No. 63, at 6.)

Pennsylvania's UTPCPL makes it unlawful for individuals or businesses to engage in unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce.  73 P.S. § 201-3.  The statute defines a variety of methods of unfair competition and unfair and deceptive acts or practices.  73 P.S. § 201-2(4).  Furthermore, the statute defines "trade and commerce" as including "any trade or commerce directly or indirectly affecting the people of this Commonwealth."  73 P.S. § 201-2(3).

In support of their motions, both Penn Lyon and the Nilsen defendants cite Baker v. Family Credit Counseling Corp for the proposition that Pennsylvania's UTPCPL provides a remedy only to citizens of Pennsylvania.  440 F.Supp.2d 392, 413 (E.D.Pa. 2006) (Dubois, J.)  Yet, as plaintiffs correctly point out, defendants

fail to mention that <u>Baker</u> involved a federal class action in which the plaintiffs were from numerous states and all sought to assert Pennsylvania's UTPCPL against the defendant.  <u>Id.</u>  We do not believe the reasoning from <u>Baker</u>, in which the court was concerned about the problem of a nationwide class applying the UTPCPL when some members of the class may have had little or no contact with Pennsylvania, applies to this case.  The instant case is not a class action.  Plaintiffs have alleged that they contracted with the defendants, who were undoubtedly doing business in Pennsylvania, for the purchase of a home to be built in Pennsylvania.

The Supreme Court of Pennsylvania has stated that the UTPCPL should be liberally interpreted in order to effectuate its primary purpose, which is the prevention of fraud.  <u>Com v. Monumental Properties, Inc.</u>, 329 A.2d 812, 816 (Pa. 1974).  Of course, declining to provide protection of UTPCPL to individuals who are not residents of the state, but nevertheless engaged in a large transaction entirely within the state, would invite fraud upon non residents engaged in transactions within the state.

Furthermore, we note that in <u>Lyon v. Caterpillar</u>, a case relied on by the court in <u>Baker</u>, the court stated that "[s]tate consumer fraud acts are designed to either protect state residents or protect consumers engaged in transactions within the state."  194 F.R.D. 206, 215 (E.D.Pa. 2000) (Brody, J.)  Similarly, in <u>In re</u>

8

Adelphia Communications Corp, another case cited in Baker, the court stated that the UTPCPL "is intended to protect residents of, or individuals found within, the Commonwealth of Pennsylvania." 331 B.R. 93, 98 (S.D.N.Y. 2005). Therefore, despite the fact that plaintiffs were not residents of Pennsylvania, we nevertheless find that their allegations establish that they were engaged in a transaction within the state and therefore entitled to the protection of the UTPCPL.

Additionally, we will reject Penn Lyon's argument that plaintiffs' contract for purchase was with High Tech. As plaintiffs correctly note, the Superior Court has expressly rejected the requirement of strict privity of contract between the manufacturer and buyer for a claim to be brought under the UTPCPL. Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 645-46 (Pa. Super. 1990). In this case, the plaintiff had contracted with a builder to install a roofing membrane manufactured by the defendant. Id. at 642-43. The court concluded that "strict technical privity was not intended by our legislature to be required to sustain a cause of action under [the UTPCPL]" and rejected defendant's arguments for dismissal on this basis. Id. at 647.

Similarly, we will reject Penn Lyon's argument that plaintiffs are not purchasers of goods for personal, family or household purposes. The UTPCPL permits "[any] person who purchases or leases goods or services primarily for

9

personal, family or household purposes" to bring a private action if he or she

suffers any damage as the result of the use of a "method, act or practice" declared

unlawful under the UTPCPL.  73 P.S. § 201-9.2  Yet, Penn Lyon cites no authority

for the proposition that a modular home is not a good primarily for personal,

family or household purposes.  In fact, as we noted, the plaintiff in <u>Valley Forge</u>

was the purchaser of a roof membrane, which we do not believe is more of a "good

primarily for personal, family or household purposes" than a modular home.

Therefore, we will reject this argument as well.

Finally, we will reject the Nielsen defendants' arguments that plaintiffs have

failed to allege that their alleged fraudulent conduct created any confusion or

misunderstanding by the plaintiffs.  It appears that defendants refer to subsection

(xxi) of 73 P.S. § 201-2(4), which defines "engaging in any other fraudulent or

deceptive conduct which creates a likelihood of confusion or misunderstanding" as

the final, catch-all method of unfair competition under the UTPCPL.  Yet, the

statute lists twenty other methods of unfair competition and plaintiffs have alleged

that defendants committed seven of these in addition to the catch-all provision.

Thus, even if defendants were able to convince us that plaintiffs have failed to

allege that defendants engaged in fraudulent or deceptive conduct which creates a

likelihood of confusion or misunderstanding, this would not result in a dismissal of

plaintiffs' UTPCPL claim because defendants do not contend that plaintiffs have failed to properly allege the other methods of unfair competition.

Additionally, we believe that plaintiffs have sufficiently alleged fraudulent or deceptive conduct by the Nilsen defendants which creates a likelihood of confusion or misunderstanding.  Plaintiffs' amended complaint contains allegations that the Nilsen defendants made numerous false representations about when the building project would be completed.  (Rec. Doc. No. 37, ¶¶ 43, 51-52.)  We believe that this conduct is sufficient to create a likelihood of confusion or misunderstanding and is therefore sufficient under the catch-all provision.

Therefore, for all of the reasons we have discussed, we will permit plaintiff's claims under the UTPCPL to proceed against Penn Lyon and the Nilsen defendants.

B.  Count II - Breach of Contract

In Count II of the amended complaint, plaintiffs allege breach of contract against only the Nilsen defendants.  (Rec. Doc. No. 37, ¶¶ 93-106.)  In their motion for judgment on the pleadings, the Nilsen defendants contend that plaintiffs' contract was solely with High Tech and that Gregory Nilsen and Vermont Estate were not parties to the contract.  (Rec. Doc. No. 63, at 7.)  Furthermore, they contend that plaintiffs' piercing claim is not sufficient to convert non-contracting

parties into contracting parties.  (Id.)

Plaintiffs allege that defendant High Tech and Vermont Estate are both run by defendant Nilsen and are shells and his alter egos.  (Id. ¶ 9.)  They allege that neither maintains a separate existence from Nilsen and plaintiffs therefore seek to pierce the corporate veil and hold Nilsen personally liable for the misconduct of High Tech and Vermont Estate.  (Id. ¶ 13.)  Yet, in Electron Energy Corp. v. Short, the Superior Court noted that "it is fundamental contract law that one cannot breach a contract that one is not a party to."  597 A.2d 175, 178 (Pa. Super. 1991).  The court found that the defendant was not a party to the contract and therefore could not be liable for a breach of it "unless there is a basis for imposing the debt of the corporation upon [defendant]."  Id.  In Int'l Union of Operating Engineers v. Linesville Construction Co., the Pennsylvania Supreme Court stated that a corporation who was not a party to the contract could be held liable under the contract if the plaintiff was able to establish that the contracting party was the alter ego of the corporation.  322 A.2d 353, 357 (Pa. 1974).  Therefore, we find that if plaintiff is successful in piercing the corporate veil, Gregory Nilsen and Vermont Estate may be held liable for High Tech's breach of contract.


C.  Count III - Negligence

12

In their complaint, plaintiffs contend that Penn Lyon negligently designated High Tech and Nilsen as a recommended builder by failing to investigate their background and skills.  (Rec. Doc. No. 37, ¶¶ 110-12.)  Furthermore, they contend that Penn Lyon negligently delivered and failed to set and anchor the building modules into position and failed to leave the building in a weather tight condition. (Id. ¶¶ 113-14.)  With respect to the Nilsen defendants, plaintiffs contend that they constructed the home in "a careless, negligent and unworkmanlike manner."  (Id. ¶ 108-09.)

Penn Lyon contends that plaintiffs' claim that it negligently designated High Tech and Nilsen as a recommended builder fails because Penn Lyon simply referred plaintiffs to High Tech, which did not give rise to a duty under Pennsylvania law.  (Rec. Doc. No. 61, at 8-10.)  The elements necessary to establish a claim of negligence under Pennsylvania law are: 1) a duty owed by defendant to plaintiff; 2) breach of that duty; 3) loss or damage suffered by the plaintiff; and 4) the breach of the duty was the proximate cause of the loss or damage.  Holt v. Navarro, 932 A.2d 915, 920-21 (Pa. Super. 2007) (citation omitted).  In order to determine whether a "duty" exists, a court should look at several factors: 1) the relationship between the parties; 2) the social utility of the actor's conduct; 3) the nature of the risk imposed and the foreseeability of the harm

incurred; 4) the consequences of imposing a duty upon the actor; and 5) the overall public interest in the proposed solution.  Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270, 281 (Pa. 2005) (citation omitted).

We do not believe that the facts alleged by plaintiffs support a conclusion that Penn Lyon simply referred plaintiffs to High Tech and therefore did not owe a duty to plaintiffs.  Penn Lyon cites Bourke v. Kazaras, 746 A.2d 642 (Pa. Super. 2000), and Weidner v. Nassau, 28 Pa. D. & C. 4th 269, 270-71 (Pa. Com. Pl. 1993) for the proposition that Pennsylvania has not adopted a cause of action based on negligent referral.  (Rec. Doc. No. 61, at 8.)  Yet, Bourke involved an allegation of negligence against the Philadelphia Bar Association for negligently referring an attorney.  Similarly, Weidner involved a negligent referral by a doctor to another doctor.

In the instant case, plaintiffs have alleged that in order to purchase a home from Penn Lyon, they were required to use one of Penn Lyon's authorized builders.  (Rec. Doc. No. 37, ¶ 28.)  They were then provided with the contact information for High Tech and Nilsen, one of Penn Lyon's builders for the area in which plaintiffs wished to build their home.  (Id.)  Furthermore, plaintiffs have alleged that Penn Lyon's website and literature had caused them to understand and believe that Penn Lyon carefully selected and trained its builders and required them

14

to adhere to construction and site preparation standards. (Id. ¶ 33.) Therefore, considering the factors set out by the court in Bilt-Rite, we believe they weigh in favor of imposing a duty of care on Penn Lyon in selecting its builders.

The Nilsen defendants argue that plaintiffs' negligence claim against them must be dismissed because recovery is barred by the "Economic Loss Rule," which states that economic losses may not be recovered in tort absent physical injury or property damage. (Rec. Doc. No. 63, at 7-8.) The United States Supreme Court defined the "Economic Loss Rule" in the case of East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). Although this rule has never been expressly adopted by the Pennsylvania Supreme Court, the Third Circuit has predicted that the Pennsylvania Supreme Court would adopt the rule as stated in East River. Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 118 (3d Cir. 1987). In East River, the Court held that when a product injures only itself, and not any person or other property, the loss is purely economic and any claim arising out of this loss should sound in contract, not in tort. 476 U.S. at 871.

Although not discussed by the Nilsen defendants, a doctrine similar to the "Economic Loss Rule" is the "Gist of the Action" doctrine. Although also not expressly recognized by the Pennsylvania Supreme Court, the Third Circuit has predicted that Pennsylvania would adopt the "Gist of the Action" doctrine as set

out by Pennsylvania's Superior Court.  Williams v. Hilton Group PLC, 93

Fed.Appx. 384, 385 (3d Cir. 2004).  This doctrine is designed to maintain a

distinction between breach of contract claims and tort claims by barring a plaintiff

from recasting breach of contract claims as tort claims.  eToll, Inc. v. Elias/Savion

Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  The reason for the

distinction is because a tort claim is created by a breach of a duty imposed as a

matter of social policy, while a contract claim is created by a breach of a duty

imposed by mutual agreement.  Id.  The critical question is whether the tort claims

are "inextricably intertwined" with the contract claims or whether the tort claims

are "tangential" to the contract.  Id. at 21.  Thus, the doctrine cannot be evaded by

merely pleading that the defendant acted negligently, recklessly, or intentionally if

the gravamen of the claim is that the defendant failed to perform a promise.

Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc., 40 F.Supp.2d

644, 651 (W.D.Pa. 1999) (citing Factory Market, Inc. v. Schuller Int'l, Inc., 987

F.Supp. 387, 394 (E.D.Pa. 1997).

We note that the Third Circuit has stated that the "Economic Loss Rule" is a

better fit for products liability tort claims while the "Gist of the Action" doctrine is

better for non-products liability cases.  Bohler-Uddeholm America, Inc. v. Ellwood

Group, Inc., 247 F.3d 79, 104 n. 11 (3d Cir. 2001).  Thus, because this is not a

products liability case, we will discuss whether the "Gist of the Action" doctrine is applicable to the instant case to bar plaintiffs' negligence claim.

We believe plaintiffs' negligence claim against the Nilsen defendants is in fact barred by the "Gist of the Action" doctrine.  Plaintiffs' claims of negligence against these defendants essentially stem from the manner in which the house was constructed.  Any duties the Nilsen defendants had to construct the house properly are those set out in the contract.  Although plaintiffs concede that High Tech may be able to invoke the written agreement in order to preclude plaintiffs' negligence claim after discovery has completed (Rec. Doc. No. 72, at 16), we do not understand why any discovery is necessary to determine that these claims are "inextricably intertwined" with the contract.  Furthermore, we note that plaintiffs' argument that the remaining Nilsen defendants are not in privity of contract and therefore should not be able to invoke these doctrines must also be rejected.  (Id.) This contention is belied by plaintiffs' piercing allegations, which state that the Nilsen defendants are all essentially the same entity and should be held liable as such.  Thus, if plaintiffs are successful in piercing the corporate veil, Gregory Nilsen and Vermont Estate may be held liable in breach of contract despite the fact that they are not in privity of contract.  If plaintiffs are unsuccessful, then plaintiffs would not be able to maintain a negligence claim against Nilsen and Vermont

17

Estate because the wrongful conduct all pertains to High Tech.  Therefore, we will

dismiss plaintiffs' negligence claim against the Nilsen defendants.

### D.  Count IV - Magnuson-Moss Warranty Act Claim

Both Penn Lyon and the Nilsen defendants contend that plaintiffs' claims

under the Magnuson-Moss Warranty Act ("MMWA") fail because a modular home

is not a "consumer product" as defined by the statute.  (Rec. Doc. No. 63, at 8-10;

Rec. Doc. No. 61, at 11-12.)  The MMWA provides for the issuances of rules

governing the contents of warranties of consumer products.  15 U.S.C. § 2302.

The MMWA defines "consumer product" as "any tangible personal property which

is distributed in commerce and which is normally used for personal, family, or

household purposes (including any such property intended to be attached to or

installed in any real property without regard to whether it is so attached or

installed)."  15 U.S.C. §2301(1).

There are several district court cases which have held that a modular home is

not a consumer product as defined by the MMWA.  Coppernoll v. Custom Housing

Center, Inc., 488 F.Supp.2d 641, 647 (W.D.Mich. 2007); Clark v. Jim Walter

Homes, Inc., 719 F.Supp. 1037, 1043 (M.D.Ala. 1989).  These courts noted the

common law of property that a dwelling, like the land to which it is attached, falls

into the category of real property.  Coppernoll, 488 F.Supp. at 645; Clark, 719

F.Supp. at 1043.  Furthermore, we note that the court in Coppernoll, which was

decided in 2007, stated that no court has reached a contrary decision since Clark,

which was decided in 1989.  488 F.Supp.2d at 645.  Furthermore, the court in

Coppernoll noted that the Federal Trade Commission had issued an advisory

opinion which had stated that a modular home was distinct from a mobile home

and should be excluded from the definition of "consumer product."  Id. at 645-46

(citing FTC Advisory Opinion, 90 F.T.C. 980, 981 (1977)).  Thus, it appears clear

that the modular home itself is not subject to the MMWA.

Yet, this does not end our analysis.  Plaintiffs argue that the MMWA covers

items such as appliances and heating, electrical, and mechanical equipment and

that their complaint contains allegations concerning the air conditioning, heating,

and various mechanical products.  (Rec. Doc. No. 72, at 18.)  16 C.F.R. § 700.1(c)

states that a "consumer product" includes "property intended to be attached to or

installed in any real property without regard to whether it is so attached or

installed" which includes items such as "air conditioners, furnaces, and water

heaters."  Section 700.1(e) states that "building materials" are consumer products

when sold to the consumer "in connection with the improvement, repair, or

modification of a home" but are not consumer products when they "are at the time

of sale integrated into the structure of a dwelling . . . as they cannot be practically

19

distinguished from realty."

Plaintiffs' amended complaint contains numerous allegations concerning issues such as the failure to properly complete installation of the exterior siding, interior walls, rear porch, and flooring.  (Rec. Doc. No. 37, ¶ 75.)  We find that these items are building materials which "are at the time of the sale integrated into the structure of the dwelling" and therefore not subject to the MMWA.  Plaintiffs also allege that defendants failed to install central air conditioning, a boiler, oil tanks, an oil furnace chimney, or a hot water storage tank.  (Id.)  Although these products might be considered consumer products, we do not see how the failure of defendants to provide these products, as opposed to an issue concerning the product's warranty, can lead to a claim under the MMWA.   Therefore, we will dismiss plaintiffs' claim under the MMWA.

E.  Count V - Conversion

Plaintiffs' fifth claim is a claim of common law conversion against the Nilsen defendants.  (Rec. Doc. No. 37, ¶¶ 129-32.)  Vermont Estate argues that plaintiffs' conversion claim makes no mention of it, that it was not a party to the contract, and that it had no dealings with plaintiffs.  (Rec. Doc. No. 63, 10.)  Of course, this contention ignores plaintiffs' piercing allegations as well as the allegation that High Tech transferred property to Vermont Estate in July 2005 for

little or no consideration.  If plaintiffs are successful in proving these allegations,

Vermont Estate may be held liable for the wrongdoing of Gregory Nilsen, who

may in turn be liable for the wrongdoing of High Tech.  Therefore, we reject this

claim by the Nilsen defendants.

F.  Count VI - Civil Conspiracy

Plaintiffs' sixth claim is one of civil conspiracy against both Penn Lyon and

the Nilsen defendants.  (Rec. Doc. No. 37, ¶¶ 133-39.)  To establish a claim for

civil conspiracy under Pennsylvania law, a plaintiff must prove:  1) a combination

of two or more persons acting with a common purpose to do an unlawful act or to

do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done

in pursuance of the common purpose; and 3) actual legal damage.  Gen.

Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003)

(citing Strickland v. Univ. of Scranton, 700 A.2d 979, 987-988 (Pa. Super. Ct.

1997)).  Furthermore, the Pennsylvania Supreme Court has also required that such

a claim require proof of malice or intent to injure.  Thompson Coal Co. v. Pike

Coal Co., 412 A.2d 466, 472 (Pa. 1979).

The Nilsen defendants argue that plaintiffs have failed to allege malice.

(Rec. Doc. No. 63, at 10-11.)  Yet, this contention appears to specifically ignore

plaintiffs' allegation that defendants' actions were "willful, wanton, malicious, and

taken with reckless and/or callous disregard for the rights and interests of Plaintiffs."  (Rec. Doc. No. 37, ¶ 137.)

Penn Lyon also argues that plaintiffs have failed to state a claim for civil conspiracy.  (Rec. Doc. No. 61, at 13-14.)  Specifically it argues that plaintiffs have failed to specifically plead the conspiracy and that plaintiffs have failed to state a claim with respect to each of the underlying acts and therefore the conspiracy claim must fail.  (Id.)

We conclude that plaintiffs have sufficiently stated a claim for civil conspiracy against all defendants.  Plaintiffs have alleged that both Penn Lyon and the Nilsen defendants violated the UTPCPL and we have already concluded that this claim may proceed.  Although plaintiffs' complaint is not entirely clear as to the basis of their conspiracy claim against Penn Lyon, we believe their allegations could be construed as claiming that Penn Lyon and Nilsen conspired to violate the UTPCPL in an effort to obtain funds from plaintiffs.  Similarly, although not implicating Penn Lyon, we believe plaintiffs' claims concerning the fraudulent transfer of assets from High Tech to Daisy Lane as well as the piercing allegations against the Nilsen defendants may also constitute a conspiracy to commit a wrongful act, as plaintiffs contend the purpose of this scheme was to shield assets from creditors such as themselves.  Therefore, we will permit plaintiffs' civil

conspiracy claim to proceed.


**CONCLUSION:**

For the reasons discussed, we will grant the Nilsen defendants and Penn

Lyon's motions in part and dismiss plaintiffs' MMWA claim (Count IV) as to all

defendants and dismiss plaintiffs' negligence claim (Count III) as to the Nilsen

defendants.



  s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD MIKOLA, CAROL     :
MIKOLA, and RMCM, LLC        :     4:CV-07-0612
                               :
          Plaintiffs,       :     (Judge McClure)
                               :
         v.                 :
                               :
PENN LYON HOMES, INC.,       :
HIGH TECH HOME BUILDERS, LLC, :
GREGORY A. NILSEN, ELIZABETH :
NILSEN, DAISY LANE HOLDINGS,  :
LLC, and VERMONT ESTATE HOME :
BUILDERS, LLC,              :
                               :
          Defendants.      :

**O R D E R**

June 4, 2008

In accordance with the accompanying Memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1.     Defendant Penn Lyon's "Motion . . . for Partial Judgment on the

Pleadings" is GRANTED in part.  (Rec. Doc. No. 60.)

2.     Defendants High Tech, Gregory Nilsen, Elizabeth Waters, Daisy

Lane, and Vermont Estate's "Motion . . for Partial Summary

Judgment on the Pleadings" is GRANTED in part.  (Rec. Doc. No.

24

62.)

3.      Count IV is dismissed as to all defendants.

4.      Count III is dismissed as to High Tech, Gregory Nilsen, Elizabeth

        Waters, Daisy Lane, and Vermont Estate.


                        s/ James F. McClure, Jr.
                        JAMES F. McCLURE, JR.
                        United States District Judge